**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

RICHARD A. GIBSON, JR.,

    Plaintiff,

v.                                                                                      Case No. 12-2911

SILVER LINE BUILDING
PRODUCTS LLC.,                                                        **Jury Demanded**

    Defendant.

---

## COMPLAINT
---

Comes now Plaintiff Richard A. Gibson, Jr. and brings this action against Defendant Silver Line Building Products LLC for discrimination on the basis of disability in violation of the Tennessee Disability Act, as codified at T.C.A. § 8-50-103, and/or retaliatory discharge in violation of the public policy and common law of the State of Tennessee. In support, Plaintiff would state as follows:

### I. JURISDICTION

1. The Court has original jurisdiction over Plaintiff's claims brought under Tennessee law pursuant to 28 U.S.C. § 1332, as Plaintiff is a resident of Tennessee and Defendant is a citizen of Delaware and/or Minnesota, and the amount in controversy exceeds $75,000.

### II. STATEMENT OF FACTS

2. Plaintiff Richard A. Gibson, Jr. ("Plaintiff" or "Mr. Gibson) is an adult citizen of the State of Tennessee, residing in Shelby County, Tennessee.

1

3. Defendant Silver Line Building Products LLC ("Defendant" or "Silver Line") is a Delaware formed limited liability company, with its principal place of business in Bay Shore, Minnesota. Defendant manufactures, transports and installs doors and windows throughout the country, as well as the Southeastern region, which includes Tennessee. The Defendant's Southeastern regional office is located in Lithia Springs, Georgia.

4. Plaintiff was hired to work as a field service technician for Defendant as an at-will employee out of the Lithia Springs, Georgia, office on or about March 8, 1999.

5. At all times herein, Plaintiff worked out of his home in Shelby County, Tennessee and traveled in the southeast United States performing work for Defendant.

6. At all times herein, Plaintiff performed his duties as a field service technician in a professional and competent manner.

7. On or about July 6, 2010, Plaintiff sustained a serious physical injury to his right shoulder while working on a job in Nashville, Tennessee.

8. After sustaining his shoulder injury, Plaintiff filed a claim for workers' compensation benefits against Defendant.

9. On or about September 7, 2010, Dr. Jay M. Saenz, an orthopedic specialist to whom Plaintiff had been referred, performed rotator cuff surgery on Plaintiff's right shoulder.

10. In January of 2011, Plaintiff returned to work on light duty with lifting and climbing restrictions from Dr. Saenz.

11. On or around July 29, 2011, Plaintiff was placed at maximum medical improvement for his shoulder injury and released by Dr. Saenz with the following permanent restrictions: no overhead lifting of more than forty (40) pounds and no climbing ladders over six (6) feet. These

permanent restrictions related to Plaintiff's shoulder injury substantially limit Plaintiff in the major life activities of performing manual tasks, lifting and working.

12. Tennessee's claim handling standards, under the Rules of the Tennessee Department of Labor – Division of Workers' Compensation, require that insurers make an offer of settlement in writing within thirty (30) days of an injured worker being placed at maximum medical improvement and receiving an impairment rating. Defendant's insurer failed to do so in the Plaintiff's case.

13. In April of 2012, after fruitless and exhausting efforts to speak with Defendant's insurer regarding a settlement of his workers' compensation case, Plaintiff retained an attorney to pursue his workers' compensation claim. Prior to this time, Plaintiff had worked full-time with no complaints from supervisors or co-workers.

14. On or about May 10, 2012, Plaintiff received a termination letter, in which Silver Line claimed it could no longer accommodate the restrictions placed on Plaintiff following his work-related injury to his right shoulder. A copy of this letter is attached as Exhibit A.

15. After receiving this letter, Plaintiff appealed his termination to his supervisor, who told Plaintiff to keep working. Plaintiff did as he was instructed and was not taken off the work schedule. In fact, Plaintiff was consistently scheduled jobs by Defendant until he was terminated again as set forth below.

16. On or around August 14, 2012, Plaintiff received another termination letter, in which Silver Line claimed it could no longer accommodate the restrictions placed on Plaintiff following his work-related injury to his right shoulder. A copy of this letter is attached as Exhibit B. In support of its decision, Defendant stated that Plaintiff had required assistance on more than 50% of his assignments. This is false. In fact, at all times after he received his permanent restrictions, Mr.

Gibson effectively performed his job with minimal assistance and accommodation. Indeed, Defendant's work records reveal that from May 10, 2012 to August 8, 2012, Plaintiff worked on sixty-seven (67) jobs, of which thirty-three (33) jobs required two (2) technicians. On twenty-four (24) of these jobs, the scheduled service technician had requested Plaintiff's assistance. Plaintiff, on the other hand, only requested assistance on nine (9) out of the sixty-seven (67) jobs completed during that time period, which equates to 13.4%.

17. On or about September 10, 2012, Silver Line further illustrated its hostility towards Plaintiff by issuing a separation notice to Plaintiff, which falsely stated that Plaintiff voluntarily resigned his employment for personal reasons. A copy of the separation notice is attached as Exhibit C.

18. As a direct result of Defendant's retaliatory and discriminatory termination described above, Plaintiff has suffered, and will continue to suffer loss of wages, income, and benefits associated with his employment, as well as other consequential damages. Indeed, Plaintiff was earning approximately $900 per week gross at the time of his termination. Additionally, as a direct result of Defendant's retaliatory and discriminatory actions described above, Plaintiff has suffered severe humiliation, embarrassment, and emotional distress.

19. All of the Defendant's actions described herein were intentional and/or in reckless disregard of Plaintiff's rights under Tennessee law.

### III. CAUSES OF ACTION

20. Plaintiff incorporates the paragraphs above as if specifically set forth herein, and for his causes of action asserts:

### A. Count 1

21.     Plaintiff, who suffered a physical impairment to his right shoulder, was substantially limited in the major life activities of lifting, performing manual tasks, and working. Defendant's termination of Plaintiff constitutes illegal discrimination in violation of the Tennessee Disability Act.  More specifically, Plaintiff was discriminated against on the basis of his disability.  Or, in the alternative, Plaintiff was regarded as disabled by Defendant and illegally discriminated against on that basis.

### B. Count 2

22.     Plaintiff, who was an at will employee, was terminated by Defendant.  A substantial motivating factor driving Defendant's termination decision was the fact that Plaintiff filed and pressed his claim for workers' compensation benefits.  As such, Defendant's conduct constitutes the common law tort of wrongful/retaliatory discharge in violation of the strong public policy of the State of Tennessee.

### IV. RELIEF REQUESTED

WHEREFORE, Plaintiff prays that the Court cause service to be issued upon Defendant. Plaintiff further demands a jury to hear this cause, and upon a hearing thereon, prays that the Court:

1. Back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

2. Front pay and the value of future lost benefits since reinstatement is not feasible;

3. Compensatory damages against Defendant in an amount to be determined by the jury;

4. Punitive damages against Defendant in an amount to be determined by the jury;

5. All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees allowed under actions brought pursuant to T.C.A. §§ 4-21-101 et seq.; and,

6. Such further relief as is deemed just and proper.

Respectfully submitted,

/s/ William B. Ryan
William B. Ryan # 20269
billy@donatilawfirm.com
Bryce W. Ashby #26179
bryce@donatilawfirm.com
DONATI LAW FIRM, LLP
1545 Union Avenue
Memphis, TN 38104
Phone: 901/278-1004
Fax: 901/278-3111

Attorneys for Plaintiff

Dated: 10.19.2012

**SilverLine by Andersen**
WINDOWS・DOORS

May 10, 2012

Richard Gibson                           EXHIBIT A
7997 Cinders Road
Bartlett, TN 38133

Dear Richard:

As you know, the permanent restrictions issued by your medical care provider restrict you from lifting more than 40 pounds, and limit overhead activity and climbing over six feet. While we have worked to accommodate these restrictions in your position as a Field Service Technician, we have concluded that these permanent restrictions prevent you from performing the essential functions of your position, even with reasonable accommodation. We are unable to accommodate these permanent restrictions in the Field Service Technician position, which requires the essential functions of frequent lifting more than 40 pounds, as well as frequent overhead work and climbing of ladders and scaffolding at various heights, including above 6 feet. At the current time, Silver Line has no positions available that accommodate your restrictions.

In accordance with Silver Line policy, under the Family and Medical Leave Act ("FMLA"), eligible employees are entitled to up to twelve (12) weeks of unpaid leave during a rolling twelve month period for reasons which include where an eligible employee's "serious health condition" renders him unable to perform the essential functions of the position. For purposes of this policy, "serious health condition" means an illness, injury, impairment or physical or mental condition involving either inpatient care or continuing treatment by a health care provider. A request for leave due to the employee's own serious health condition must be supported by a certification issued by the applicable health care provider. Upon return from a family or medical leave of absence, which has extended not longer than twelve (12) workweeks, the employee will be returned to the same or an equivalent position to the one held when the leave started. If the leave was due to the employee's own serious health condition, he/she must present medical certification from the doctor clearing them for a return to their regular work. Please advise Silver Line if you wish to request FMLA leave.

If you do not request or qualify for FMLA leave, because you are unable to work due to an illness or injury and you are not receiving benefits from a company-provided disability income replacement plan (short-term disability, long-term disability or workers' compensation), you will be placed on a leave for up to 60 days as you attempt to return to work. During this time, you may contact Marjorie Zerby at (770) 819-9311 ext. 8239 or me at (770) 819-9311 ext. 8279 or (214) 918-1576 to return to work or inquire about any available position within Silver Line for which you are qualified, and which you may perform, within your restrictions, with or without reasonable accommodation. If you remain not covered by a company-provided disability income replacement program, and you are unable to return to work within 60 days, your employment with Silver Line will end at that time.

Sincerely,

*[signature]*

Joel Barrientos
Human Resource Manager



August 14, 2012

Richard Gibson
7997 Cinders Road
Bartlett, TN 38133

EXHIBIT B

Re: Termination of Employment

Dear Richard:

As you know, the permanent restrictions issued by your medical care provider restrict you from lifting more than 40 pounds, and limit overhead activity and climbing over six feet. While we have worked in past months to accommodate these restrictions in your position as a Field Service Technician, we have concluded that these permanent restrictions prevent you from performing the essential functions of your position, even with reasonable accommodation. Unfortunately, the essential functions of your position as a Field Service Technician require frequent lifting more than 40 pounds, as well as frequent overhead work and climbing of ladders and scaffolding at various heights, including above 6 feet. While you have devoted serious effort toward your role since these restrictions were issued, essential requirements of your position have not been met, and Silver Line has been required to provide personnel to assist you in completing field service work in connection with more than 50% of your assignments. At the current time, Silver Line has no positions available that accommodate your restrictions.

As we informed you by letter dated May 10, 2012, in accordance with Silver Line policy, under the Family and Medical Leave Act ("FMLA"), eligible employees are entitled to up to twelve (12) weeks of unpaid leave during a rolling twelve month period for reasons which include where an eligible employee's "serious health condition" renders him unable to perform the essential functions of the position. For purposes of this policy "serious health condition" means an illness, injury, impairment or physical or mental condition involving either inpatient care or continuing treatment by a health care provider. A request for leave due to the employee's own serious health condition must be supported by a certification issued by the applicable health care provider. Upon return from a family or medical leave of absence, which has extended not longer than twelve (12) workweeks, the employee will be returned to the same or an equivalent position to the one held when the leave started. If the leave was due to the employee's own serious health condition, he/she must present medical certification from the doctor clearing them for a return to their regular work.

Because you have not requested or qualified for FMLA leave, you remain unable to perform the essential functions of your position due to your permanent restrictions, and you are not covered by a company-provided disability income replacement or leave program, your employment with Silver Line will terminate effective August 31, 2012.

Please advise me if your restrictions have changed, or if you have questions regarding the information set forth in this letter.

Sincerely,

Marjorie Zerby
HR Generalist

SILVER LINE BUILDING PRODUCTS LLC
ONE SILVER LINE DRIVE ■ NORTH BRUNSWICK, NJ 08902 ■ 732.435.1000 ■ SILVERLINEWINDOWS.COM



State of Georgia
Department of Labor

EXHIBIT C

# SEPARATION NOTICE

1. Employee's Name: **RICHARD GIBSON**

2. SSN: 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

    a. State any other name(s) under which employee worked: _____

3. Period of Last Employment: From 03/08/1999   To 08/31/2012

4. REASON FOR SEPARATION:
    - [ ] a. LACK OF WORK
    - [x] b. If other than lack of work, state fully and clearly the circumstances of the separation. Type Below.

    **VOLUNTARY RESIGNATION - PERSONAL REASONS**

5. Employee received payment for: (Severance Pay, Separation Pay, Wages-In-Lieu of Notice, bonus, profit sharing, etc.)   DO NOT include vacation pay or earned wages.

    type of payment _____ in the amount of $ _____ for period from: _____ to _____

    Date above payment(s) was/will be issued to employee: _____

    IF EMPLOYEE RETIRED, furnish amount of retirement pay and what percentage of contributions were paid by the employer.

    $ _____ per month   _____ % of contributions paid by employer.

6. Did this employee earn at least $3,500.00 in your employ?  [x] YES  [ ] NO   If NO, how much? $ _____

Average Weekly Wage: $ _____

Employer's Name: **SILVERLINE BUILDING PRODUCTS**

Address: **1780 WESTFORK DR**

City: **LITHIA SPRINGS**   State: **GA**   Zip Code: **30122**

Employer's Telephone No.: **(770) 819-9311** Ext. _____

Ga. DOL Account Number: 590997-03

(Number shown on Employer's Quarterly Tax and Wage Report, Form DOL-4.)

I CERTIFY that the above worker has been separated from work and the information furnished hereon is true and correct. This report has been handed to or mailed to the worker.

_Signature of Official, Employee of the Employer or authorized agent for the employer_

**H R Coordinator**
Title of Person Signing

9/10/12
Date Completed and Released to Employee

### NOTICE TO EMPLOYER
At the time of separation, you are required by the Employment Security Law, OCGA Section 34-8-190(c), to provide the employee with this document, properly executed, giving the reasons for separation. If you subsequently receive a request for the same information on a DOL-1199FF, you may attach a copy of this form (DOL-800) as a part of your response.

### NOTICE TO EMPLOYEE
OCGA SECTION 34-8-190(c) OF THE EMPLOYMENT SECURITY LAW REQUIRES THAT YOU TAKE THIS NOTICE TO THE GEORGIA DEPARTMENT OF LABOR FIELD SERVICE OFFICE IF YOU FILE A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS.

DOL-800 (R-08/05)